Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ADRIAN LOPEZ-COTA,<br><br>　　　　　　Defendant. | Case No. 1:04-cr-00004-JWS<br><br>**MOTION TO REDUCE SENTENCE**,<br>*Filed on Shortened Time* |

I.  <u>Nature of Motion</u>

　　　　Defendant, by and through his counsel, Mary C. Geddes, Assistant Federal Defender, moves this court for resentencing pursuant to 18 U.S.C. § 3582(c)(2).  This statute provides jurisdiction to a district court to reduce the sentence of a defendant "who has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission."  <u>Id.</u>

　　　　Mr. Lopez-Cota seeks a reduced sentence of 87 months' incarceration.

II. <u>Jurisdiction</u>

This court has jurisdiction under § 3582(c)(2)[1] and the discretion to ameliorate the long sentence imposed in this case. Because the Sentencing Commission has approved retroactive application of an amendment to the crack cocaine guideline,[2] and because the court's sentencing decision in this case was based upon the "old" guideline for the scoring of crack cocaine offenses, Mr. Lopez-Cota is eligible for resentencing under 18 U.S.C. § 3582(c)(2).

---

[1] 18 U.S.C. § 3582(c)(2) provides:
   In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

[2] On November 1, 2007, the United States Sentencing Commission issued amendments to the crack guidelines which lowered the penalties for most crack cocaine offenses. This action was taken in response to studies which raised grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated in the sentencing guidelines. <u>See generally</u> UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2007); UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002); UNITED STATES SENTENCING COMMISSION, SPECIAL REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (February 1995). <u>See also</u> <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 568-69 (2007) (discussing history of crack cocaine guidelines and various Sentencing Commission reports). On December 11, 2007, the Commission voted to apply the crack amendments retroactively to cases sentenced before November 1, 2007. <u>See</u> 73 Fed. Reg. 217-01 (2008). In conjunction with voting to apply the crack amendments retroactively in November 2007, the Commission also significantly modified U.S.S.G. § 1B1.10, the guideline concerning retroactive application of amendments. In April 2008, the Commission further amended the sentencing guidelines to change the drug equivalency calculation between crack cocaine and marijuana in poly-drug cases. This newest change became effective May 1, 2008, and is retroactive.
   Through these amendments, the Commission has sought a correction of the base offense level for the prior disproportionate treatment of crack cocaine relative to powder cocaine. In most cases, the anticipated result for the eligible defendant will be a two-level decrease in the base offense level for controlled substances offenses.

III. <u>Mr. Lopez-Cota's Status</u>

Adrian Lopez-Cota, a Mexican citizen, was convicted in 2005 of a 2004 drug trafficking crime. This was his first criminal conviction. At the time of his offense four years ago, he was 21 and had a 5th grade education in Mexico.

His sentence was imposed in 2005 under the Sentencing Guidelines, with the base offense level computed under § 2D1.1. The court sentenced Mr. Lopez-Cota to a sentence of 108 months' imprisonment and four years of supervised release.

He has been in custody in this case since October 8, 2004. According to the Bureau of Prisons' website, Mr. Lopez-Cota's anticipated release date is August 10, 2012. However, INS has placed a detainer on him and his deportation is expected.

During his incarceration, Mr. Lopez-Cota has done well. As testament, he has received a number of certificates for his completion of work and education programs. They are attached as Exhibit A.

IV. <u>Plea and Sentence</u>

On October 8, 2004, Mr. Lopez-Cota was arrested in the Western District of Washington, Seattle. On October 12, 2004, a two count indictment was filed in the United States District Court, District of Alaska, Juneau, charging defendant and others with Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of §§ 846 and 841(a)(1); 841(b)(1)(A)&(C).

On March 18, 2005, Mr. Loez-Cota appeared before the court and entered a plea of guilty to Count 1 of the indictment. There was a Rule 11(c)(1)(C) and (A) plea agreement in this

case; that bargain reduced the ceiling for his sentence to 168 months and the dismissal of the second count.

A Pre-Sentence Report, ("PSR"), was prepared with respect to the Sentencing Guidelines.

The PSR writer found that Mr. Lopez-Cota was in Criminal History I.

With respect to the offense level, the writer found that Mr. Lopez-Cota was eligible for a three-point reduction in the offense level for his acceptance of responsibility.

The PSR writer also recommended that he should be held responsible for 1,494.3 grams of cocaine powder, 444 grams of d-meth, and 1,097 grams of cocaine base ("crack"). The marijuana equivalencies of these drugs would have netted defendant a base offense level of 38 under the United States Sentencing Guidelines, ("U.S.S.G.").

Mr. Lopez-Cota disputed the drug type and quantity amounts attributed to him as relevant conduct. He also argued that he was eligible for a two-level reduction for Safety Valve purposes under U.S.S.G. § 5C1.2(a)(5), a position disputed by the government and the PSR writer.

Finally, in this post-*Booker*[3] proceeding, he asked for the court's consideration of his impoverished background and family responsibilities. As a very young child, Mr. Lopez-Cota was abandoned by both parents and raised by his grandmother, an *indigena*, who was extremely poor. Mr. Lopez-Cota began supporting his grandmother when he was only 13. Elderly and poor, his grandmother developed health problems. Mr. Lopez-Cota was her only source of support, and he had provided for her as best he could, sending money through the mails.

At sentencing, the court determined that Mr. Lopez-Cota had a total offense level of 31, and sentenced him to 108 months imprisonment. The pertinent sentencing range was 108 to 135 months. Mr. Lopez-Cota received a sentencing at the bottom end of the sentencing range.

## V. Relief Sought

Mr. Lopez-Cota seeks a reduced sentence. He is entitled to a resentencing under Amendment 706 of the Sentencing Guidelines, which altered the drug quantity table in U.S.S.G. § 2D1.1(c). Pursuant to that amendment, he should receive a two-level reduction of the offense level, as authorized by the Sentencing Commission. The base offense level under § 2D1.1 was 38; it should be corrected to "36." The total offense level approved by the court should be lowered from

---

[3] By the time of Mr. Lopez-Cota's sentencing, the United States Supreme Court had already ruled in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Subsequent Supreme Court cases have clarified it – namely Rita v. United States, 551 U.S. ___, ___-__, 127 S. Ct. 2456, 2464 (2007) (stating that courts "may depart (either pursuant to the Guidelines or, since *Booker*, by imposing a non-Guidelines sentence)"); *Gall v. United States*, 552 U.S. ___, ___, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (a sentence outside the Guidelines carries no presumption of unreasonableness); and *Kimbrough v. United States*, 552 U.S. ___, ___, 128 S. Ct. 558, 578, 169 L. Ed. 2d 481 (2007) – have created a different sentencing scheme in which the Guidelines are but one of the several factors to be considered under 18 U.S.C. § 3553(a). The "overarching provision" in *Booker* sentencings is the requirement that courts "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Kimbrough*, 128 S. Ct. at 570.

31 to 29, and a sentence also at the low end of the pertinent sentencing range should be imposed, i.e., 87 months.

### VI. The Crack-Cocaine Disparity Justifies Sentencing Reduction

The Supreme Court held that "under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the district court [in Kimbrough] erred in holding the crack/powder disparity mandatory." Id. at 564. As a result, this court is free to "conclude . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 563.

The Supreme Court's decision in Kimbrough was grounded in the research and recommendations of the United States Sentencing Commission itself, which has acknowledged that the crack/powder disparity in the Guidelines is deeply flawed. Id. at 568 (citing Commission's conclusion in its 2002 report to Congress that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 [Anti-Drug Abuse] Act").[4] **Indeed, based on its research, the Commission has recommended at different times that Congress reduce the disparity to 20 to 1, 5 to 1, and as low as 1 to 1**. Id. at 569 (citing Commission's 1995, 1997, and 2002 reports).

Most recently, when it submitted its proposed two-level reduction in the crack Guideline, the Commission recommended that Congress further "substantially" reduce the ratio. Id.

---

[4] Among the flaws in the Guideline are: (1) "the assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution;" "the 'anomalous' result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" and "the severe sentences . . . imposed 'primarily upon black offenders.'" Id. at 568.

at 569 (citing Commission's 2007 report). The Commission recommended further reductions in the ratio because even the amended crack guideline still yields grossly disproportionate sentences. In Kimbrough, the Supreme Court characterized the amendment as "modest," noting that it "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1" – well above the Commission's recommended ratios. Id. at 573. Thus, the Court found, "[t]he amended Guidelines still produce sentencing ranges keyed to the mandatory minimums in the 1986 Act," which it identified as the source of the unwarranted disparity between the crack and powder cocaine Guidelines to begin with. Id. at 569 n.10. Indeed, even the Commission has admitted that the amendment is "'only . . . a partial remedy' for the problems generated by the crack/powder disparity." Id. at 569 (citing Commission's 2007 report). Kimbrough's rationale for varying from the crack guidelines therefore remains even after the new guideline is applied.

### VIII. Mr. Lopez-Cota's Post-Offense Conduct Also Warrant Sentence Reduction

Resentencing under section 3582(c)(2) necessarily involve consideration of factors in 18 U.S.C. § 3553(a). That section identifies the "Factors To Be Considered in Imposing a Sentence." In addition to considering the guidelines, and any amendments to them (§ 3553 (a)(4)), § 3553(a) directs the court to consider "the history and characteristics of the defendant" and "the need for the sentence imposed." Thus it is appropriate to consider Mr. Lopez-Cota's considerable efforts at self-rehabilitation, in addition to and in conjunction with the amended crack sentencing guideline, when determining the new sentence to be imposed. Section 3553(a)(2)(A).

As evidence of his post-offense rehabilitation during the past three years, Mr. Lopez-Cota appends his institutional work record – he is a consistently "good" worker – and certificates for educational programs.

IX. Conclusion

Mr. Lopez-Cota respectfully requests the benefit of the crack sentencing amendment, the reduction of his sentence to 87 months.

DATED this 3rd day of July, 2008.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on July 3, 2008, a copy of the foregoing document, with attachments, was served electronically on:

Frank Russo , Esq.

/s/ Mary C. Geddes